and the first of the cases to be heard is United States v. Deutsch, which is a bail appeal by the government. Let us hear from the appellant. May it please the court, my name is Megan Farrell and I represent the United States in this matter. The district court clearly erred in finding that Deutsch's bail conditions reasonably assure his appearance and the safety of the community. Here, both the magistrate court and the district court found that the defendant was a danger to the community and that no condition or combination of conditions could assure the safety of the community. In doing so, both courts recognized that the defendant's actions were extreme and that the crimes he committed were distinguishable from other child pornography offenses. Indeed, here the defendant, over the course of several years, used Facebook and other social media applications to engage minors, some as young as 10 years old, in online chats. In these chats, the defendant befriended and manipulated these children, thereby convincing them to create sexually explicit videos and images of themselves just for him, including one where a minor was drunk and drunken at the defendant's explicit request. In an effort to obtain these images for himself, the defendant chatted with hundreds of minors online and when he was successful, he engaged in conversations that lasted months, which often occurred late at night, thereby establishing real relationships with his victims and distinguishing this case from the past that the defendant should not be released based on what it termed a change of circumstances. According to the district court, that change was the availability of remote cyber monitoring in the defendant's Florida home. But a cyber monitoring condition had been previously considered by the magistrate court, district court, and dismissed by both as insufficient to mitigate the danger that this particular defendant posed to the community. The district court had observed in February of 2019, in an oral opinion, that if the defendant was sufficiently motivated, he could indeed find a way to access the internet and continue communicating with minors. In the same decision, the district court addressed each of the relevant factors set out in 3142g in detail and found that it was appropriate that the defendant be detained. The only real change in circumstances since the district court issued that decision in February is that the government has obtained additional evidence proving the defendant's guilt and showing that the scope of his conduct is broader than initially believed. And the other change is the defendant's ongoing acts of dishonesty with respect to the court. Taking those two things in order, the new evidence is the additional Facebook records, which span a broader period. They show that the defendant was trolling Facebook, searching for and communicating with minors since 2015, as opposed to 2017 as originally believed. This evidence only makes the government's case stronger. The second actual change in circumstances are the defendant's repeated acts of dishonesty in connection with his ongoing bail applications through the spring of this year. These applications relied on the opinion of the defendant's expert, Dr. Kaplan, to whom the defendant had lied about the scope and extent of his conduct. These dishonest acts establish a pattern that when viewed in light of the record only reinforced the fact that there's no condition or combination of conditions that can reasonably assure the safety of the community and this defendant's appearance in court. The district court's finding to the contrary is clear error. The community can only be safe from this particular defendant whose weapon of choice is the internet if he cannot access the internet. The conditions here do not sufficiently mitigate against this risk. Indeed, pretrial services, the party that is responsible for supervising the defendant, has repeatedly warned that it is unable to do this, that it cannot reasonably assure that this defendant cannot access the internet if he is out on bail. The district court erred when it did not see these warnings. Instead, it opted for remote cyber monitoring, which, as explained by pretrial services, is actually a weakened form of the very conditions that the district court had previously rejected as sufficient to ensure the safety of the community. And as a result, it commanded clear error when it made this decision. If the court has any questions, the government will be prepared to answer them. Judge Parker, any questions? Yeah, help me understand this, ma'am. It's my understanding that initially, the Eastern District took the position and the judge adopted that the Middle District of Florida didn't have sufficient cyber monitoring capability. But later, the Eastern District, your office reversed its position on this particular point and concluded that you did have the capability to remotely monitor and restrict Mr. Kendrick's internet access while he was at his parents' house in Florida. So, could you help me with this apparent technical confusion? Yes, Your Honor. So, if I could, I'll just start very briefly with an explanation of what cyber monitoring is. Essentially, it's a way of supervision where pretrial services install software on devices like cell phones and computers that enable it to monitor the device. So, from another location, pretrial services would be able to see how the person was using the phone or the laptop, what websites they looked at, et cetera. This is a technical application that your office is familiar with and uses, for example, on other defendants? Your Honor, it's an application that pretrial services uses with other defendants. And as a result, our office is familiar with its utilization. And to be clear, my understanding is based on pretrial services explanations throughout the course of this case. And so, here, Florida, the District of Florida, pretrial services in that location does not participate in cyber monitoring. It doesn't have that capability. The Eastern District of New York does have that capability. Those facts have never changed throughout the course of this case. In recent history, the defendant suggested in his application that because of the way in which cyber monitoring is conducted, it wasn't really necessary for the people on the ground in Florida, at pretrial services in Florida, to be the ones administering this program, because it... I thought that in the course of one of the bail applications, I'm not sure which one, the district court mentioned his understanding that Florida didn't have the capability. Correct. And cyber monitoring would be impossible or impractical at Deutsch's parents' house. But at the September, I believe it was in June, I think it was, the government informed the court that pretrial services in the Eastern District is able to remotely... I'm quoting from the docket entry, is able to remotely monitor electronic devices, including a router. So I'm still confused as to whether this can be done for a detainee who's in Florida. So the way that it is done, Your Honor, is that there's computer software which allows a third party, pretrial services, to monitor the electronic device, which is in another location. Here, those electronic devices are in Florida, but it is not pretrial services in Florida that's sitting on the other end of the computer monitoring those electronic devices. It's pretrial services in the Eastern District of New York that's conducting that monitoring. That's better, isn't it? Your Honor, it's not, because the way the pretrial services traditionally utilizes this supervision goes hand in hand with physically monitoring the defendant, checking in on their home, checking the devices, ensuring that the devices and the software haven't been tampered with, and generally supervising the defendant. And so at pretrial suggestion throughout the course of this case, the only way that that could be done effectively would be if the defendant was located in the Eastern District of New York where they could administer the program. Can't pretrial services in Florida do that for you? They will not, Your Honor. It's only pretrial, they do not have that capability and they aren't willing to participate in that program, so it is only pretrial services in the Eastern District of New York. And one of the problems, which has been highlighted by the Eastern District of New York, is that pretrial services will not conduct a search of the home. And so to the extent that the person being monitored acquires a device and does not disclose the existence of that device to pretrial services, it will never be monitored. And so this type of monitoring relies on the honor system. And the government's position here is that this defendant is not a candidate for the honor system. It is not sufficient to monitor only devices that he discloses because he has been dishonest on so many occasions, even trying to perpetrate a fraud on the court back in September of 2018 by convincing or trying to convince his father to sign a bond under false pretenses. And then he has continued to engage in acts of dishonesty vis-a-vis the court through his expert and throughout these applications. And so because cyber monitoring, remote or otherwise, in New York or in Florida can only work if the defendant discloses a device and then pretrial services put software on that device, it's not an effective condition here to assure the safety of the community. It does block advert to COVID in reaching his decision. Your Honor, not in his written decision on July 1st. It was referenced in the oral. I don't think it's referred to it. Was that a did he did he advert to that as a factor supporting his decision? In his in his initial June decision whereby he released the defendant. Yes, he did refer to that as a factor. Okay. Thank you. Judge Rodger. Yes, I actually have a number of questions. When you first filed appeal in this case, your argument was that the district court had not adequately considered the presumption that applied, correct? Correct. And that the district court remedied that in its July order. Is that also correct? Yes, Your Honor. All right. So that's not even an issue anymore. Correct, Your Honor. All right. So the error here is that you're saying that the district court erroneously, as a matter of law, thought that he the risk of his deposed to the danger of the community could be adequately dealt with through the various conditions put on. You're saying that as a matter of law, he could not reach that conclusion. Yes, Your Honor, that it was clear error to do so. Has this court ever so held? That if that a released by a district judge on the imposition of certain conditions to mitigate the risk was was erroneous as a matter of law. Your Honor, I'm not aware of whether of whether this court has ever so held. All right. Yeah, let me let me deal with the Florida monitoring. Um, if I understood your answers to Judge Parker, you're saying that the remote monitoring from the eastern district cannot be paired with on site monitoring in Florida because the probation department in Florida refuses to do that. Is that right? Your Honor, the position is that it can't be done effectively as it can't be done effectively. And to the extent that monitoring might require home visits, even searches of the home, you're saying that the southern district of Florida refuses to do that. Yes, Your Honor. Have court orders been sought to direct them to do that? No, Your Honor. It's been pretrial services representation that they don't have the capability that they don't have the training and that they will not. What capability and training do they not have? I understand they don't have the capability to do the remote monitoring. But as I understand it, your problem with the eastern district doing the remote monitoring is there's no on site officer to enter the home or check how many computers he's got or electronic devices. That seems to me to be the kind of thing home visits that pretrial service officers routinely do. So I'm a little perplexed as to what it is they are refusing to do. I understand, Your Honor. So pretrial services in the eastern district of New York has explained that the way that they administer the program, the pretrial services office that is monitoring the defendant's devices and understands how many devices are in the home, what kind of devices and what is going on, needs to be able to simultaneously access the home in order to ascertain whether or not it is effectively working. And an example of that is here. When the defendant was released, it took almost a week to get the software loaded onto the phone because the defendant's father was not complying with pretrial services request. And as a result, there was a one week delay between when the defendant was released and when the software was loaded onto the devices. Pretrial services in the eastern district of New York was unable to go to the home to deal with the defendant and his father in person to ensure that the software was adequately loaded. There was a similar issue with the router and it took almost a month for the software to get loaded onto the router. And it's pretrial services in Florida that is not willing to engage in this process to facilitate this monitoring, even though they are willing to conduct home visits for standard purposes. All right. Now we come back to my first question. Has a court order been sought requiring them to do that? That, you know, however frequently, once a month, once every two months, or however often the eastern district of New York would be doing home visits to check, their counterparts in Florida would be asked to check. Has anybody sought orders from either the Florida or eastern district courts to do that? I mean, after all, pretrial services is an arm of the court. Your Honor, the government has not sought orders to require them to do that. But even if the government didn't, even if pretrial services in Florida does go, they are not the ones that are familiar with the electronic devices, how they're being used. And pretrial services, which is the expert here in this type of monitoring, has said themselves that the person that's doing the monitoring needs to put hands on the device to ensure that it has not been tampered with. And so even if somebody in Florida went on a routine basis, being that they're not familiar with the electronic devices and that they are not the ones monitoring the devices, it wouldn't be effective for them to go and to do this, because they are not the ones that are monitoring the devices. And as a matter of policy, pretrial services won't search a home. They will only visit the home. And so— Is this all laid out in the record to the district court? Because one of the reasons I'm concerned is it seemed to me from my own review of the record that a lot of the discussion that was going on right up until the time the district judge changed the ruling was that it was impossible to monitor the server or the router. I'm not sure which device, but there was a device that it was not possible to remotely monitor. And when the district judge was told that that was incorrect and that it could be monitored remotely, one reads between the lines, the district judge may have thought that there had been a lack of candor. I'm not suggesting there was, but the district judge may have thought that and allowed bail release. I didn't see a lengthy discussion about how people had to be on site to determine tampering or that the Florida officials were reluctant or even refusing to do this. I didn't see that discussion. Did I miss something? Your Honor, I can give you several citations to the record where pretrial has made this clear. From the beginning, pretrial has said that it had some reluctance as to cyber monitoring at all. Because there was a kind of device that couldn't be monitored remotely? No, Your Honor. Initially, but when we were before the magistrate court, pretrial services expressed some Florida, 110 regarding the fact that pretrial won't search for devices, government appendix two at 164. Pretrial has repeatedly explained that it doesn't recommend release or cyber monitoring at all, full stop, completely separate and apart from remote cyber monitoring in Florida. But also, the way that the remote cyber monitoring came up as a suggestion was at the defendant's request. All along, pretrial services took the position that cyber monitoring would not be sufficient here. With respect to Your Honor's question about the district court changing its mind once it became clear that this was an option, I would refer the court to the defendant's February 2019 application and the district court's February 2019 decision. Because in that decision, the district court held that the defendant was a danger to the community and that there was no condition or combination of conditions that could ensure the safety of the community. The bail application that was proposed in connection with that February decision was one where the defendant would have no internet access at all. And so, although internet monitoring has been a feature of the party's discussion throughout the course of the record, when the district court found that there was no condition or combination of conditions, it was in response to an application that proposed no devices at all in the home. Look, I am just looking at pages A, 18, 19 of the record, where I believe it's the officer tells the court, I would not be able to monitor a router because you need to be in proximity to a router to connect it to the monitor. Therefore, I would not be able to monitor what devices are actually in that house. I would only be able to monitor the devices the defendant has disclosed are in the house. So this whole concern about knowing what devices he had seemed to all be tied to the monitor, I thought. And then eventually, it was discovered, disclosed to the court that, yes, indeed, there could be remote monitoring of the router. Isn't that how it played out? Your Honor, I think the distinction is that remote monitoring refers to software alone, whereas the monitoring that pretrial services are initially referring to in the portion of the record that you're citing relates to their ability to physically monitor and electronically monitor, which the position of pretrial services takes is that this goes hand in hand in order to be effective. And so now what's occurring is one without the other. And that has been the development. The defendant has been on bail now for several months. Is there anything that suggests that there has been a violation of the conditions of bail? No, Your Honor. The government doesn't have any information about a violation, although our position is that we wouldn't necessarily know if the defendant had. And given the defendant's history, as discussed already, just because he hasn't doesn't mean that he won't. But there were two lapses that I briefly mentioned earlier in pretrial's ability to monitor the measure. Thank you. Thank you, Judge Kibanis. Thank you, counsel. The defense counsel writes in Deutsch's brief that he is in full compliance with the terms of his bail. That's on the very first page of Deutsch's brief to us. Is that accurate? Your Honor is referring to the defendant's response? I apologize. Yes, in the brief submitted by Deutsch's counsel, he writes that Deutsch is in, quote, in full compliance with the terms of his bail, unquote. And I'm asking you whether that's accurate. Your Honor, the government has no way of knowing whether the defendant is in full compliance with his bail. If the defendant were to secure an electronic device and secrete it in his home, there would be no way for the government or pretrial services to know that he is doing that. All right. Let me go back to some of the questions that Judge Rodger already asked. Where exactly is the home confinement taking place? Where in Florida? At the defendant's parents' home in Florida. Where in Florida? I believe it's the Middle District of Florida, Your Honor. Yes, where? I want to know exactly where. The Middle District of Florida, if I'm not mistaken, is based primarily in Orlando. Is that right? Your Honor, I'm just checking the record to see if I can... My point is this. Orlando is not an obscure or primitive place that doesn't... Offhand, the pretrial services office in the Middle District of Florida would not be as fully equipped to handle its affairs as the pretrial services office in the Eastern District of New York. You're informing us that that is the case, that the pretrial services office in the Middle District of Florida is less well-equipped than the pretrial services office in the Eastern District of New York to handle this matter. Is that what you're telling us? Your Honor, I'm not saying that they're not well-equipped. It's just the fact that they don't have a cyber monitoring program, and that information comes from pretrial services. Well, let me go back to Judge Rodger's initial line of inquiry. You have not applied to the district court in the Central District of Florida for whatever it is you want. I don't quite understand why the pretrial services in Brooklyn, along with you, can't appear in Orlando, Florida and make an appropriate application. I don't understand why the district court in Orlando wouldn't be in a position to instruct pretrial services to get the job done. I mean, as Judge Rodger pointed out, pretrial services, along with probation, they work for the courts. This should be a relatively easy thing to do, rather than to get into an emergency appeal before the Court of Appeals. Your Honor. Is there a reason why you haven't been able to be in touch with the people in Orlando? Have you spoken to them by phone? Your Honor, the government has not spoken to them by phone, but the government's position Why haven't you spoken to them by phone? Because the government's position is that cyber monitoring, regardless of where it occurs, is not an effective condition to ensure the safety of the community. And the district court agreed with this position in a prior application, which involves the defendant having no internet devices in the home. This notion of cyber monitoring is just one condition, and the way that it's being the issue, which is that that condition, regardless of where it is administered, is not sufficient to ensure this defendant doesn't present a risk to the community. Regardless of where it is administered, it relies on the honor system. It only works if the defendant discloses devices, and this defendant is not amenable to that type of supervision. And so even if the government had been in touch or tried to get in touch, it would be in pursuit of a condition that the government and pretrial services has maintained is insufficient. The conduct here is extreme. The defendant acted manipulatively over a long period of time. He has continued to be dishonest vis-a-vis the district court, and he is not someone capable of supervision, even if he was in New York. And a condition of electronic, a condition of cyber monitoring doesn't ameliorate that risk. And so there are 17 conditions of release. Is that right? Imposed by the government. And those 17 conditions don't do it, in your view. Correct, your honor. And Deutsch was held in custody for almost two years. Is that right? Correct, your honor, but about 20 months. I'm going to one of Judge Rodgers' questions about appellate review of district judge determinations. You may recall that in the Anderson v. City of Bessemer, the Supreme Court held that the district court's findings, if the findings are permissible or even plausible in light of the record, the court of appeals may not reverse it. Are you aware of that particular rule? Yes, your honor. And you're telling us, therefore, that Judge Block's findings, most recent findings, on this record are neither permissible or even plausible. Is that right? Yes, your honor. All right, Judge Parker, any other questions? Yeah, I was just looking at the notes I was taking while you were talking, ma'am, and I took what you told us, or told me, or told us in response to one of my questions, that the pretrial services in Florida had refused to implement these conditions. Did I mishear you? Your honor, pretrial services in the Eastern District of New York represented that Florida does not have a cyber monitoring condition. The only other detail I have, which is in the record, is that at the initial bail application before the magistrate court, there was a recess so that pretrial services in the Eastern District of New York and all the Middle District of Florida could ascertain whether or not they had this capability. And when the parties went back on the record, pretrial services in the Eastern District of New York relayed the fact that they did not. Subsequently, you discovered that they, in fact, do. Florida does not, your honor. But you've never talked to anybody in that office, is that right? No, correct, your honor. Pretrial services in the Eastern District of New York talked to its sister office and made that representation. Thank you. Judge Raji? I'll be very brief about this. Ms. Farrell, I don't know whether we're not making ourselves clear or whether you are, there's a more serious problem with your response. It's one thing to tell this court that a pretrial service is refusing to do something. It's quite different to say that they don't have the capability of doing something. Our questions that prompted your refusal answer eventually focused on the need to supplement in Florida what could not be done because people were physically in New York. They can monitor electronically here in New York, but in terms of going to somebody's house, they would need someone on the scene. Now, I'm not sure that I understand even yet, are you saying that the folks in Florida were asked to do home visits and refused? No, your honor. That's not a capability question, and I'm troubled that I don't think your answers have been either clear, or they've either been unclear, or they just haven't wanted to respond to the court's questions. So, nobody refused to do home visits or refused to count how many electronic devices there were in the home, right? Your honor, my understanding from pretrial representation is that they don't have the capability to do electronic monitoring. That's being done out of New York, but now you're saying that's not good enough because somebody has to do simultaneous on-the-scene things. So, I don't think you're so dense that you don't understand that we're asking you whether the on-the-scene part can be done by the District of Florida, and they have not been asked and have not refused. Is that the bottom line here? Your honor, they certainly have not refused, and to the extent that I suggested that in my apology for the confusion, the position is that they cannot do that effectively because they are not the office that is monitoring the defendant's devices. Well, this is Judge Labrador. I don't quite understand. Alexander Graham Bell lives so that we can pick up the phone and deal with these people. I don't quite understand. I think you've gotten the message from the three of us by now, but we don't quite understand how the Middle District of Florida, we can take judicial notice of the fact that we're talking about a district that includes Fort Myers, Tampa, Orlando, Jacksonville. Those are very advanced communities. I don't quite understand, and this is a matter of court to court. It's not even the Eastern District U.S. Attorney's Office, the Eastern District or Middle District of Florida. I should think that if you want relief and you want this done properly, as you will have heard from Judge Raji and Judge Parker and me, you can get a court order, or Judge Block can certainly facilitate this by ordering pretrial services in Brooklyn to be in touch with pretrial services in Orlando or wherever and get it done. This is a very advanced system of justice that we have here. The whole thing, it seems very odd. Well, I'll just ask Judge Parker if he had any questions. Oh, no. Judge Raji? No, thank you. I think you may have gotten the message, counsel, but nevertheless, let's hear from Judge Clark. Good afternoon, Your Honors. This is Matt Larson of the Federal Defenders of New York for Mr. Deutsch. Your Honors, as your questions to the government reflect, the government has not shouldered its heavy burden of showing clear error. This is not a bail application. This is a bail appeal, and this court's review is therefore for clear error. To paraphrase the Supreme Court's ruling in Anderson, and as Judge Cabranes noted, where there is a permissible view of the evidence, that view cannot be clearly erroneous. Here, Your Honors, it was entirely permissible for the district court to conclude, after 20 months of briefing and rounds of hearings, that the government had not shown by clear and convincing evidence that absolutely no combination of conditions could reasonably assure public safety. The district court found that the 17 strict conditions here will reasonably assure against any danger to the community, and that kind of finding, as this court noted in the Shakur case, is, quote, the special province of the prior effect. Indeed, as the district court observed at the May 29th hearing, quote, I know Deutsch. I deal with it every night. I mean, we have had seven bail applications. We have been dealing with this up and down. At that hearing, Your Honors, the district court said it wanted maximum confidence, and that is just what it got. The 17 exceedingly strict conditions here, quote, satisfied the court that the defendant would not now be at risk of flight or danger to the community. Now, Your Honors, the government mentioned that Mr. Deutsch is solely on the honor system here, and that's plainly wrong. The 17 conditions of bail here include home confinement, GPS tracking of Mr. Deutsch's physical movements, control of the internet router in the home, monitoring of all of the devices connected to the router, a $100,000 bond that could cost the home if Mr. Deutsch disobeys, and Mr. Deutsch is being supervised by his father, a third-party custodian and former Rikers Island guard. He is keenly aware, keenly motivated, rather, to ensure compliance here because his home is on the line. Now, to address what seems to be a question of the court about how this surveillance is operating, let me be clear. Mr. Deutsch is being monitored both physically and electronically. There is a bracelet on his ankle tracking his movements. If he leaves the house, pretrial services knows immediately. I spoke to trial counsel this morning, the check-in. Mr. Deutsch has left his house in the last three weeks for only two reasons, one, to either go to court-ordered counseling or to go to pretrial services-ordered drug testing. Besides the physical monitoring in this case, Your Honors, which would certainly alert pretrial services if Mr. Deutsch were to try to go to, say, an electronics store and buy a cell phone, there's also electronic monitoring here. Let me try to be clear about this. The router is the device that allows the items in the home to connect to the internet. The router is currently under the control of pretrial services in New York. That means that they see all four devices which are connected to the router. They can disconnect a device remotely if they wish, and they will also know if any additional device tries to gain access to the internet. Now, as the government has pointed out, this monitoring is being done remotely in New York, but that hardly means Mr. Deutsch is on the honor system. As Your Honors pointed out, pretrial services in Florida is on the ground to ensure compliance. They have made home contacts. They've seen Mr. Deutsch face-to-face, and they, as the government just confirmed to Your Honors, have reported no violation of the conditions of his release. Your Honors can be sure that if anything untoward were to happen, pretrial services would respond. Your Honors, the government disagrees with the district court's finding that the 17 conditions here are adequate, but that is no basis for identifying clear error. That's a quotation from the Khrushchev case in our briefs. Again, in Anderson, the standard plainly does not entitle a reviewing court to reverse simply because it's convinced it would have decided the case differently. And again, the Martyr case, the appellant is asking us, the Court of Appeals, to indeterminately, excuse me, to independently determine the bail question, but we are precluded from adopting that standard of review. Your Honors, the standard of review here is exacting, and the government has come nowhere near meeting it. It identifies no legal error. It identifies no factual misapprehension. The facts were clear. The government made its argument to the district court. The government is displeased with the outcome, but that is no basis for a finding of clear error. And I'll be happy to answer your questions. Judge Parker. Oh, I have no questions. Judge Raji. I just have a few.  Can you first of all tell us where exactly in Florida that is, that the home is, and that your client is staying? Spring Hill, Florida, Your Honor. Spring Hope? Spring Hill. Spring Hill. And what would be the largest nearby, the nearby city, largest nearby city? I am Googling that right now, Your Honor. Let's see. The surprising lack of curiosity by the government and the defense as to where this man actually is. But go ahead and tell me. According to Google and your Google Maps, it looks like Spring Hill is just north, just north of Tampa. Okay. Um, now, long, long ago, when I was on the district court, there was sometimes problems with posting residential property in Florida because of the homestead exemption. What, what is the, what is the real risk to Mr. Deutsch's father in Florida of ever losing the home? My understanding based on the record here, Your Honor, is that the risk is real. It's a $100,000 bond secured by 100,000, excuse me, $135,000 of equity in the home itself. So I, I am not aware of a homestead provision which would make this bond meaningless. And certainly the government has never made that argument. Well, maybe the government will want to address that, but that's an, I, again, I was just trying to get something clarified. The main concern that someone might have here on the record is the fact that your client has a record for dishonesty. You can, you can dispute whether that's so, but there are, there might be concerns about his conduct with respect to his father and a prior bail package with respect to his own psychiatric expert and what he told her about the scope of his crimes. It does seem that one of the concerns that a district judge ought to have in allowing any and admitting any defendant to bail is that he needs it when he says he'll abide by the bail conditions. Why wouldn't this record give a district court pause as to your client's willingness to abide by any conditions of bail? One minute. I think previous to the June 4th ruling, your honor, there was that concern. And that's why judge Block said, I want maximum confidence. I want you to convince me that bail is appropriate in this case. And that's when the government disclosed finally after 20 months that in fact, remote monitoring and control of a router was possible. And that's why in the July 1st order from the district court, he says, if, if, if only the government had told me this 20 months ago, perhaps, you know, we wouldn't be here now. I think your honor is right. That is a concern. And it's a concern that the district court required maximum confidence about, which is even more, of course, than the Bail Reform Act requires. The Bail Reform Act calls for a reasonable assurance. And the court here found that reasonable assurance is supplied by the 17 exceedingly strict conditions. The government, the government's argument is essentially, he might evade them somehow. But that's hypothetical. Your argument is not based on the facts of this case. The government hasn't alleged. Well, how would you do that? You know, as soon as he leaves the house, a signal is sent out that he's left the house. He's wearing a GPS because he orders it. He orders the device online. All the internet traffic is being monitored, your honor. Monitored for absolutely every communication he has or only to ensure that it's not an illicit communication. It's not illicit for him to go online and shop on eBay or Amazon or whatever. My understanding, and I'm sure the government will correct me if this is not accurate, is that the devices being monitored are monitored for all internet activities. Including those of his father? Yes, I mean, if his father were to get online and use his credit card to buy something that would be known to. Yes, your honor. And I think that explains why at first, you know, the government points to a little hesitation here on the part of the father about the scope and the nature of this monitoring. I think there was initially a little resistance. Perhaps the father didn't quite understand that it's not just his son here under observation, but it's everyone in the house. And that assurance just goes, however, to show that there was no clear error here. Thank you. Thank you, Judge Cabranes. I have no questions. Does the government want to take the opportunity of taking a minute to answer anything it thinks appropriate? If I could, your honor, yes. Please go ahead. Just briefly, if I could touch on the technical issues. With respect to the monitoring software, I just would like to use a metaphor. It's almost like if you could imagine a bug inside of the phone, so that the phone or the device is being monitored. A phone with a bug would be monitored. A phone with no bug would not be monitored. And so to answer Judge Raji's question, the defendant is not permitted to have an internet capable device. However, there exists in his home now four known devices that belong to his parents. And those have, for lack of a better term, bugs on them. Pretrial services has unlimited access to monitor those phones. If another device were to make its way into the home that didn't have this quote unquote bug on it, that device could be used to access the internet, to commit crimes, to do all sorts of things without pretrial knowing. Counsel suggested just now in his argument that a device like that would necessarily need to access a router. But the nature of cell phones these days is that they don't need a router. Just having cell phone service is enough to access the internet. And so these are the ways in which monitoring software can be evaded. And with respect to the allegation that the government quote unquote disclosed something this spring, that is inaccurate. Pretrial services all along suggested that monitoring could occur from the Eastern District of New York. At the defendant's suggestion this spring that it could actually be done differently contrary to pretrial services recommendation, pretrial services responded that it could technically be done that way. It wasn't a revelation from the government. It was something where pretrial services agreed that something could be done differently than it had recommended at the defendant's suggestion. And finally, the defendant's argument that his position isn't based in the facts of the case is contrary to the entire record. Because the fact is that in February when the defendant made a bail application that involved him living in New York with no devices whatsoever located in his home, the district court found that he should not be released because it could not reasonably assure the community. And nothing has changed in favor of the defendant since that application. Thank you very much. Judge Parker? I have no further questions. Thank you. Judge Raji? Are you satisfied that the parent's home is not going to be subject to any kind of Florida homestead exemption if it had to be executed? Your Honor, the government did raise that before the magistrate court way back in the beginning and it was dismissed by the court there. The government isn't fully satisfied, but... Did it get raised in front of Judge Block? It did not, Your Honor. Why not? Because the government's position, overarching position, was that the defendant should be detained. All right. Thank you. Thank you, Judge Cabranes. Thank you. Thank you, counsel. We'll reserve decision and we'll...